IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAJESH TANK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 11 C 4619 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| ) | |
| DEUTSCHE TELEKOM, AG, ) | |
| T-MOBILE INTERNATIONAL, AG ) | |
| and T-MOBILE USA, INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Rajesh Tank claims Deutsche Telekom AG, T-Mobile International AG and T-Mobile USA discriminated against him with respect to his termination and pay. He also alleges various state law claims including defamation, and claims under the Illinois Wage Payment and Collection Act and the Illinois Personnel Records Review Act. T-Mobile USA ("T-Mobile") moves for summary judgment, which, for the reasons stated below, the Court grants.

**Local Rule 56.1**

The Court notes at the outset that Tank's additional statements of fact do not conform to the parameters set forth in the local rules. Contrary to Local Rule 56.1(b)(3)(C), which requires *short* numbered paragraphs, each of Tank's additional statements of fact is anywhere from two to ten sentences long with most being five or more sentences. The local rules contain a limit on the number of statements of fact for a reason. As noted in the Committee Comment for Local Rule 56.1:

> Local Rule 56.1 is revised to set forth limits on the number of statements of fact that may be offered in connection with a summary judgment motion. *The judges of this Court have observed that parties frequently include in their LR56.1 statements of facts that are unnecessary to the motion and/or are disputed*. The judges' observation is that in the vast majority of cases, a limit of 80 asserted statements of fact and 40 assertions of additional statements of fact will be more than sufficient to determine whether the case is appropriate for summary judgment. *The number of statements of fact has been set in light of the requirement of section (a)(3), which requires that only "material facts" be set down*. A party may seek leave to file more asserted statements of fact or additional fact, upon a showing that the complexity of the case requires a

relaxation of the 80 or 40 statement limit.

Local Rule 56.1 (emphasis added). Tank's additional statements of fact violate not only the letter but also the spirit of Local Rule 56.1. Tank disregards the local rules at his own peril. The Court only briefly outlines the facts below and discusses relevant facts as necessary in the text of its analysis.

**Facts**

T-Mobile is a corporation engaged in the business of providing wireless telephone service to customers located throughout the United States, Puerto Rico and the U.S. Virgin Islands. (Pl.'s Resp. Def.'s Stmt. Fact., Dkt. # 115, ¶ 5.) Tank worked at T-Mobile as an Area Director of Engineering Operations, Areas Director of Southern California and eventually, by 2006, Vice- President of the Central Region. (Pl.'s Resp. Def.'s Stmt. Fact, Dkt. # 115, ¶ 3.) Tank was terminated after, T-Mobile contends, an internal investigation concluded that Tank had engaged in various acts of misconduct. Neville Ray, then Senior Vice-President of Network Engineering, terminated Tank on August 4, 2010, though Ray told Tank that T-Mobile would inform Tank's colleagues that he had resigned. (Tank Dep., Pl.'s Ex. 1, at 278:9-279:11.)

**Analysis**

  A. <u>Pay Discrimination</u> (Count 1)

Tank contends that he was paid a lower base salary than comparable white employees in violation of § 1981. *Walker v. Abbott Labs.*, 340 F.3d 471, 475–78 (7th Cir. 2003) (finding that § 1981 protects at-will employees from discrimination in pay or promotion). Courts "employ essentially the same analytical framework to employment discrimination cases whether they are brought under . . . Title VII[ ] or § 1981." *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 n.4 (7th Cir. 2003). Tank does not point to any direct evidence of pay discrimination and appears to rely on the indirect method of proof with respect to this claim. Under this method, a plaintiff has the burden of establishing a prima facie case of discrimination by showing that he: (1) is a member of a protected class; (2) met the employer's legitimate business expectations; (3) suffered an adverse employment action; and that (4) similarly-situated employees outside of the protected class were treated more favorably. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012).

T-Mobile argues that Tank's pay discrimination claim fails because he cannot point to any similarly-situated white vice-presidents who were paid more than him. Tank contends that he was paid a lower salary than David Gallacher, Jennifer Silveira and Bentley Alexander. Employees need not be identical in all ways in order to be similarly situated. *Caskey v. Colgate–Palmolive Co.*, 535 F.3d 585, 592 (7th Cir. 2008). Generally, a plaintiff can meet his burden by showing that the proposed co-worker: (1) dealt with the same supervisor, (2) was subject to the same standards, and (3) engaged in substantially similar conduct such that the employer would not have grounds for treating the plaintiff and the comparator differently.

2

*Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012). These factors, however, are not a "magic formula" and "the similarly-situated inquiry should not devolve into a mechanical, 'one-to-one mapping between employees.'" *Id*. (citation omitted).

As to Silveira, who was a Vice-President of Engineering and Operations, Tank contends based on working with her that "it did not appear to me she had an educational background in Engineering" and that according to her LinkedIn profile, she does not have an engineering degree or a Masters Degree in any field. (Tank Decl., Pl.'s Ex. 13, ¶ 68.) Neither his impression of what degree she "appeared" to have nor a LinkedIn profile constitutes admissible evidence of her educational background. Tank clearly lacks personal knowledge of Silveira's education, *see* Fed. R. Civ. P. 56(e) (requiring that affidavits filed in opposition to a summary judgment motion be based on an affiant's "personal knowledge"), and the LinkedIn reference is hearsay that does not fall within any recognized exception. *Pace Am., Inc. v. Elixir Indus.*, 06 C 4661, 2009 WL 211953, at *7 n.7 (N.D. Ill. Jan. 27, 2009).

While Tank states that Silviera's job "involved program management in the south region and [she] accepted a position reporting to the corporate office in Bellevue performing similar functions in 2008," (Tank Decl., Pl.'s Ex. 13, ¶ 69), he does not discuss whether Silveira dealt with the same supervisor, was subject to the same standards or engaged in substantially similar conduct such that T-Mobile would not have had grounds for treating her and Tank differently. The same is true with respect to David Gallacher and Bentley Alexander. Tank makes almost no reference at all to their qualifications and backgrounds and does not address who their supervisor was, what standards they were subject to, or whether they engaged in substantially similar conduct as Tank.

While the Court acknowledges that no "magic formula" exists for ascertaining whether employees are similarly situated, Tanks fails to point to any evidence from which the Court could determine that Tank was similarly situated to these three employees. Therefore, the pay discrimination claim is denied.

B. <u>Discriminatory Termination</u> (Count 2)

Tank alleges that his termination was the result of discrimination on the basis of his race and national origin under 42 U.S.C. § 1981. Race and national origin discrimination claims can be established in one of two ways – either the direct or indirect method of proof. *Lewis v. City of Chi.*, 496 F.3d 645, 652 (7th Cir. 2007). Under the direct method, a plaintiff must produce either direct or circumstantial evidence of discrimination. *Mach v. Will Cnty. Sheriff*, 580 F.3d 495, 499 (7th Cir. 2009). Direct evidence usually "requires an admission of discriminatory animus," while circumstantial evidence "establishes an employer's discriminatory motive through a longer chain of inferences," *id.*, also referred to as a "convincing mosaic." *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 734 (7th Cir. 2011). According to the Seventh Circuit,

> [c]ircumstantial evidence demonstrating intentional discrimination includes: "(1) suspicious timing, ambiguous oral or written statements, or behavior toward or

> comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination."

*Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008) (citation omitted). Tank does not refer to any direct evidence of discrimination, but seeks to create a convincing mosaic of circumstantial evidence to show discriminatory intent under the direct method.

First, he contends that Ray treated Tank worse than all other direct reports, citing his additional statement of fact number 8, but because that fact concerns T-Mobile's "core values" and is wholly irrelevant to this assertion, it is disregarded. Tank next asserts that Ray mocked an Indian accent in front of other T-Mobile managers. Again, Tank's reference to his additional statement of fact number 57, which does not mention any incident dealing with a mock Indian accent, is irrelevant and will be disregarded. To the extent that Tank actually meant to refer to paragraph 56 of his statement of additional facts, in which he states that a former employee, Haider Syed, heard Ray mock an Indian accent in front of a T-Mobile Vice-President, the citation is unpersuasive. Syed states that in approximately May or June 2007, Ray, upon hearing that a T-Mobile meeting had occurred at a Moroccan restaurant, turned to Syed and said in an Indian accent, "I heard there were four foot hookas there." (Syed Aff., Pl.'s Ex. # 17, ¶ 25.) An "isolated comment or 'stray remark' is typically insufficient to create an inference of discrimination, but it may suffice if it (1) was made by the decision-maker, (2) around the time of the decision, and (3) referred to the challenged employment action." *Mach*, 580 F.3d at 499. *See also Olson v. N. FS, Inc.*, 387 F.3d 632, 635 (7th Cir. 2004) ("A statement can be direct evidence of discriminatory intent where the statement is made around the time of and in reference to the adverse employment action."). While the comment was made by Ray, the decisionmaker, it did not occur around the time of or refer to Tank's termination, which occurred in August 2010. Thus, the statement is insufficient to create an inference of discrimination.

Tank also notes that a T-Mobile manager made a comment that Tank's region was "too Indian," and that John Mavers, Director of Human Resources for Engineering, made a comment that an employee who made ethnic slurs probably had a reason to dislike Indians. (Pl.'s Corrected Mem. Opp'n, Dkt. # 126-1, at 16.) Tank's citation to his additional statement of fact number 47 as to the first comment does not support the "too Indian" comment. Therefore, the Court will not consider it. Moreover, according to Tank's additional statement of fact on the Mavers' comment, Mavers "asked Tank whether managers in the Kansas City market had a reason to resent or be hostile towards Indians." (Def.'s Resp. Pl.'s Stmt. Add'l Fact, Dkt. # 134, ¶ 29.) Because Tank's representation in his brief of the statement (i.e., "that an employee who made ethnic slurs probably had a reason to dislike Indians") is inaccurate, Mavers was not the decisionmaker and the comment was not made at the time of or in reference to the termination decision, the Court does not find them sufficient to create an inference of discrimination.

4

Tank also asserts that Ray's treatment of him as a "second-class" vice-president provides circumstantial evidence of discrimination. Specifically, Tank contends that Ray denied him speaking opportunities at executive events and credit or recognition for projects that Tank developed. Tank also states that Ray made himself inaccessible to Tank, implemented a 2008 "coaching" plan as to Tank with respect to his purported improper preference of three minority contractors, swore at Tank when Tank suggested the preference allegations were false and ignored positive survey results from colleagues about Tank's performance. (Def.'s Resp. Pl.'s Stmt. Add'l Fact, Dkt. # 134, ¶¶ 14-20.) Even assuming these assertions are true, none of them points directly to any discriminatory motive for Ray to have terminated Tank or denied him opportunities. *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 675 (7th Cir. 2012) (circumstantial evidence must "point[] directly to a discriminatory reason for the employer's action") (citation and internal quotation marks omitted). In order to conclude that race or national origin discrimination was the basis for Ray's conduct, one would be required to engage in inference or presumption, which is not appropriate with direct evidence. *Lim v. Trs. of Ind. Univ.*, 297 F.3d 575, 580 (7th Cir. 2002) (direct evidence should "prove the particular fact in question without reliance upon inference or presumption") (citation and emphasis omitted).

Moreover, for the reasons discussed in the Retaliatory Termination section below, Tank cannot show that T-Mobile's reason for terminating him was pretextual. Therefore, for these reasons, Tank's claim of discriminatory termination fails.

C.      Retaliatory Termination (Count 3)

Tank also alleges that his termination was in retaliation for his engaging in protected activity. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403 (7th Cir. 2007) ("[A] plaintiff may maintain a cause of action under section 1981, where the plaintiff has suffered retaliation for advocating the rights of those protected under section 1981"). Specifically, Tank asserts that he was retaliated against by individuals in human resources for complaining about purportedly racist conduct and comments towards other employees.

Although a party may prove retaliation under either the direct or indirect methods of proof, *Coleman,* 667 F.3d at 859, Tank proceeds only under the direct method of proof. To establish retaliation under the direct method, Tank must show that: (1) he engaged in protected activity; (2) T-Mobile took an adverse employment action against him; and (3) there was a causal connection between his protected activity and the adverse employment action. *Id*.

T-Mobile contends that Tank's retaliatory discrimination claim fails as a matter of law for several reasons, the primary one being that Tank cannot show pretext. *Argyropoulos v. City of Alton*, 539 F.3d 724, 736 n.6 (7th Cir. 2008) ("[A]n employee's failure to cast doubt on an employer's nonretaliatory explanation will also doom a retaliation claim under the direct method"). T-Mobile asserts that as a result of two unrelated complaints its Corporate Investigations Department received about Tank, the department conducted an investigation and found that Tank: (1) had allowed a contractor, Barry Sias, whom T-Mobile had ordered in 2008 be removed, to return to work for T-Mobile under an alias; (2) continued to show favoritism

5

towards a certain employee; and (3) without obtaining prior approval, had donated over $23,000.00 of T-Mobile's funds to a charitable organization on whose board Tank sat, spent over $11,000.00 of T-Mobile funds to hire a law firm to conduct research regarding raising Tank's profile, and spent $10,000.00 of T-Mobile funds to obtain credentials to attend the Republican National Convention. (Def.'s Stmt. Fact, Dkt. # 85, ¶ 41.) Ray attests that he honestly believed that the information provided to him in the investigation memoranda was true and correct. (Def.'s Ex. H, Ray Decl., ¶ 9.)

"The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered." *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000). "Even if [an employer's] reason for [the employee's] discharge was foolish or trivial or even baseless," the reason is not pretextual if the employer honestly believes the reason for the employment decision at issue. *Gordon v. United Airlines, Inc.,* 246 F.3d 878, 889 (7th Cir. 2001) (citation and internal quotation marks omitted).

Tank first argues that Ray's declaration in which he states that he honestly believed the information in the investigation report should be stricken because in his deposition, Ray could not state with certainty whether the investigation report (marked as deposition exhibit 64, which is now Plaintiff's summary judgment exhibit 44), was the document he reviewed prior to terminating Tank. During his deposition, Ray stated that the exhibit was voluminous but that he remembered "reviewing a summary document from the corporate investigations team, and this is probably it, but I can't confirm that." (Ray Dep., Pl.'s Ex. 5, at 91:4.) Tank contends that the statement in Ray's declaration that he honestly believed the information provided to him in the "investigation memoranda" contradicts his deposition testimony and should therefore be disregarded. The Court disagrees. While Ray may not have been able to state at his deposition that the document he was shown was the exact document he reviewed prior to terminating Tank, he confirmed that he read a summary document from the corporate investigation team prior to ending Tank's employment. Ray's statement in his declaration that he believed the information provided to him by the corporate investigations unit does not contradict that testimony.

Tank also asserts in his motion to strike that Ray's reference in his declaration to a 2008 corrective action plan for Tank as "discipline" contradicts his deposition testimony. But, during his deposition, Ray merely indicated that he *did not know* if he would characterize the 2008 plan as "discipline." (*Id*. at 62) (emphasis added.) This difference does not constitute a contradiction. Nor is it material to the issue of pretext whether Ray characterized the 2008 corrective action plan as discipline. The relevant point is that in 2008, Tank was placed on a corrective action plan in which "[t]here's clearly a reference . . . to remove [certain T-Mobile contractors], and the implication would clearly be that he would not bring them back." (*Id*. at 76.) Tank admits that one of the findings of the 2010 investigation that Ray reviewed prior to terminating Tank is that Barry Sias, one of the 2008 removed contractors, came back to work at T-Mobile with Tank's permission and apparent approval. (Messinger Decl., Def.'s Ex. I3, 2010 Investigation Report, at 7-8.)

While Tank's brief and response to T-Mobile's statements of fact contain a lengthy

6

discussion about why the 2008 and 2010 investigation findings are inaccurate, he ultimately fails to point to any record evidence in support of his assertion that Ray did not honestly believe the findings in the report. Absent such evidence, Tank cannot prevail on his retaliation claim. Therefore, T-Mobile is entitled to summary judgment on this claim. The Court therefore, will not address T-Mobile's remaining arguments regarding the retaliation claim.

D. <u>Defamation</u>[1]

Tank also alleges that T-Mobile defamed him. "Statements are considered defamation per se when the defamatory character of the statement so obviously injures the plaintiff's good name or reputation that the plaintiff need not prove injury or damages." *Quinn v. Jewel Food Stores, Inc*., 658 N.E.2d 1225, 1231 (Ill. App. Ct. 1995). A statement is defamatory per se if its harm is obvious and apparent on its face. *Owen v. Carr*, 497 N.E.2d 1145, 1147 (Ill. 1986). In Illinois, a statement is defamatory per se if it falls under one of five categories: (1) words that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication. *Solaia Tech., LLC v. Specialty Pub. Co.*, 852 N.E.2d 825, 839 (Ill. 2006). "To prevail on a state law claim for defamation a plaintiff must show that: (1) the defendant made a false statement about the plaintiff, (2) there was an unprivileged publication of the defamatory statement to a third party by the defendant, and (3) the plaintiff has suffered damages." *Smock v. Nolan*, 361 F.3d 367, 372 (7th Cir. 2003). Whether a statement is defamatory per se or is reasonably susceptible to an innocent interpretation is a question of law for the court to decide. *Bryson v. News Am. Publ'ns, Inc*., 672 N.E.2d 1207, 1215 (Ill. 1996).

As to the first element of a defamation claim, the Court notes at the outset that neither party identifies the actual statements that are purportedly defamatory. Setting forth only general categories of allegedly defamatory statements necessarily requires rejection of the claim for failure to meet the first element – that the defendant made a false statement about the plaintiff. Nonetheless, the Court, using Tank's Rule 56.1(b)(3)(C) Statement of Additional Facts (Dkt. # 120), has attempted to identify the actual statements Tank finds objectionable.

The first statement is Ray's testimony that Mavers told him Tank had resigned and so that is what he put in the company e-mail to employees regarding Tank's departure. (*Id*. ¶ 45.) According to Tank, however, "Mavers knew Tank had not resigned when T-Mobile employees

---

[1] While Tank alleges that the Court has supplemental jurisdiction over the state law claims (Compl., Dkt. # 1, ¶ 141), the Court notes that it also has diversity jurisdiction over the state law claims. Thus, while normally declining to exercise jurisdiction over supplemental state law claims when the federal claims have been resolved, the Court will consider the state law claims based on diversity jurisdiction.

7

and executives were notified by e-mail that Tank had resigned" and "Mavers knew sharing false information related to individual's employment could have adverse effects on the individual's career." (*Id*.) From this, the Court construes the alleged false statement to be Ray's e-mail to other employees that Tank had resigned rather than was terminated. But, a statement that he resigned neither states or implies an inability to perform or want of integrity in the performance of his employment duties, nor does it impute that Tank lacks ability or otherwise prejudice him in his profession. *See, e.g., Proctor v. Bd. of Educ., Sch. Dist. 65, Evanston, Ill.*, 392 F. Supp. 2d 1026, 1032 (N.D. Ill. 2005) (statements by board president that reason for the plaintiff-teacher's transfer was "not just the skeleton matter . . . I do know, it was more than this event" and "had nothing to do with No Child Left Behind, freedom of speech or any one incident" were not defamatory per se). Thus, Ray's statement that Tank resigned does not constitute defamation per se.

Tank also points to the deposition testimony of Mary Crowl, a regional development manager at T-Mobile (Crowl Dep. I, Pl.'s Ex. 7, at 5), who testified regarding Tank's departure. In response to a question as to "what did you hear as to why [Tank was terminated]" (*id*. at 44), she stated "[m]ostly because of an affair with Angelique [Stephens, another T-Mobile employee]," "[p]eople speculated that he was partial to certain vendors," and "there was a contractor working for us under an alias, and I heard from someone, I don't know who, that it might have been because of that." (*Id*. at 44-45.) Tank also states that numerous then-current and former T-Mobile employees and vendors informed him that they heard he had been terminated for engaging in an extramarital affair with Stephens, embezzling, engaging in kickbacks or for other illegal or improper conduct. (Def.'s Resp. Pl.'s Stmt. Add'l Fact, Dkt. # 134, ¶ 47.)

But Tank has not identified the speaker of any of the alleged statements; thus, he has not pointed to any evidence demonstrating that T-Mobile made any false statements about him. As noted by another court, "rumors bearing derogatory messages . . . are not defamatory unless instigated by the defendant." *Luttrell v. O'Connor Chevrolet, Inc*., No. 01 C 0979, 2002 WL 1263990, at *8 (N.D. Ill. June 5, 2002) (citation omitted). When asked who had defamed his character, Tank responded that:

> I think the manner in which the investigation, ultimately, the termination, which I feel is discriminatory and retaliatory, in which that was done, led to a lot of rumors and speculation within the organization that came out of the organization at all levels, from staff all the way to the executive level, and permeated out into the industry.

(Tank Dep., Pl.'s Ex. 1, at 366.) But Tank fails to point to any specific statement made by the defendant that was defamatory.

Because Tank has not pointed to any specific competent evidence demonstrating that T-Mobile made a false statement about him, his defamation claim fails. Accordingly, the Court grants T-Mobile's motion for summary judgment as to this claim.

E.   Illinois Personnel Records Review Act

Tank next alleges that T-Mobile violated the Illinois Personnel Records Review Act, 820 Ill. Comp. Stat. 40/1 et seq. ("IPRRA"), when it failed to provide him or allow him to inspect his personnel records despite his request. The IPRRA provides a private right of action for employees who are denied access to personnel records or whose records are divulged without written notice. 820 Ill. Comp. Stat. 40/12(c). However, the IPRRA provides that an individual may file suit "where efforts to resolve the employee's complaint concerning such violation by conference, conciliation or persuasion pursuant to subsection (b) have failed and the Department has not commenced an action in circuit court to redress such violation." *Id*. Subsection (b) states as follows:

> If an employee alleges that he or she has been denied his or her rights under this Act, he or she may file a complaint with the Department of Labor. The Department shall investigate the complaint and shall have authority to request the issuance of a search warrant or subpoena to inspect the files of the employer, if necessary. The Department shall attempt to resolve the complaint by conference, conciliation, or persuasion. If the complaint is not so resolved and the Department finds the employer has violated the Act, the Department may commence an action in the circuit court to enforce the provisions of this Act including an action to compel compliance. The circuit court for the county in which the complainant resides, in which the complainant is employed, or in which the personnel record is maintained shall have jurisdiction in such actions.

820 Ill. Comp. Stat. 40/12(b).

T-Mobile contends that Tank did not exhaust his administrative remedies. On July 1, 2011, Tank's attorney filed a complaint with the Illinois Department of Labor ("IDOL") stating that although he requested his personnel file, T-Mobile did not provide it to him. (Pl.'s Resp. Def.'s Stmt. Fact, Dkt. # 114, ¶ 62; Def.'s Ex. O.) Tank's attorney received a letter from IDOL dated August 25, 2011 stating that it had received his complaint and instructing him to contact T-Mobile within 10 days of receiving the letter to set up an appointment with T-Mobile to review his records. (Def.'s Ex. O.) The letter further stated that Tank's investigation file would be closed if Tank did not "request further assistance in writing within thirty (30) days from the date of this letter." (*Id*.) IDOL also sent a letter to T-Mobile on August 25, 2011, which included a copy of Tank's complaint and requested that T-Mobile allow Tank to review his personnel file. (Pl.'s Ex. 14, ¶ 7; *id*. Ex. 1, 8/25/2011 letter from IDOL to T-Mobile.) While Tank states that he contacted T-Mobile's counsel (Wood Decl., Pl.'s Ex. 14-1, 9/9/11 email from Wood to T-Mobile counsel) upon receiving the August 25, 2011 letter from IDOL, Tank fails to point to any evidence that he requested additional assistance from IDOL when T-Mobile still did not provide him with a full copy of his file.

Tank asserts that by filing the IPRRA complaint with IDOL, he satisfied his burden to exhaust his administrative remedies. The Court disagrees. "The Supreme Court has set out two

9

purposes for exhaustion: 'protecting administrative agency authority and promoting judicial efficiency.'" *Gonzalez v. O'Connell*, 355 F.3d 1010 (7th Cir. 2004) (citation omitted). As another court in this district has concluded, the plain and ordinary meaning of the IPRRA indicates that "the Illinois legislature intended that the Director of the Department of Labor be the primary enforcer of the statute, and that an employee's private right of action arises only when the Director is unable to resolve the dispute between the parties and also elects to forego legal recourse." *Anderson v. Bd. of Ed. of City of Chi.*, 169 F. Supp. 2d 864, 870 (N.D. Ill. 2001). By failing to contact IDOL, as instructed, after T-Mobile apparently did not respond to his September 9, 2011 request for his personnel file, Tank did not allow the administrative review process to run its course. In other words, he did not "exhaust" his administrative remedies. *Regalado v. Linaweaver*, No. 12 C 1499, 2013 WL 1196593, at *3 (N.D. Ill. Mar. 22, 2013) ("Exhaustion of available administrative remedies means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).") (citations and internal quotation marks omitted). Thus, Tank not only prevented IDOL from playing its central role in enforcing the statute, he compelled involvement by this Court, thus undermining exhaustion's goal of promoting judicial efficiency.

The Court notes that IDOL's own IPRRA complaint instructions contemplate ongoing involvement by IDOL in the event that its initial efforts at conciliation are not fruitful. The complaint instructions, of which the Court takes judicial notice, state that once a complaint is received and processed, "[s]elf-explanatory letters will be sent to you and your (former) employer." Illinois Department of Labor, PRRA Complaint Instructions, http://www.illinois.gov/idol/Laws-Rules/ legal/Pages/PRRA-Instructions.aspx. As noted above, these self-explanatory letters were sent on August 25, 2011. The instructions go on to state that:

> You may be required to participate in an informal investigative hearing. If the Department is unable to proceed/assist you with your complaint, a RIGHT TO SUE LETTER will be issued. Such letter will show that you have exhausted your administrative remedies and allow you to pursue any civil remedies available at law and your file will be closed.

*Id*. It is undisputed that no right to sue letter has been produced by Tank. To allow Tank to claim exhaustion by unilaterally disengaging from the conciliation process before it is complete would subvert IDOL's important role in enforcing the IPRRA and render its provisions pointless. The Court is unwilling to advance such an interpretation of the statute.

Because Tank failed to exhaust his administrative remedies, the Court grants summary judgment to T-Mobile on Tank's IPRRA claim.

F.  Illinois Wage Payment and Collection Act ("IWPCA")

As an initial matter, Tank moves to strike the declaration of Kim Lupo, T-Mobile's Director of Executive Compensation, which T-Mobile submitted in support of its motion for summary judgment on this claim. Tank claims Ms. Lupo's declaration lacks foundation and that she was not disclosed in discovery. As the Director of Executive Compensation, Lupo is

qualified to authenticate T-Mobile's bonus plan, which is the only point on which the Court refers to her declaration. Moreover, T-Mobile identified Ms. Lupo in depositions and documents that were produced to Tank. (Def.'s Resp. Mot. Strike, Dkt. # 133, at 9.) A party has a duty to supplement its initial disclosures only when the additional information "has not otherwise been made known to the other parties during the discovery process." Fed. R. Civ. P. 26(e)(1)(A). Therefore, the motion to strike Ms. Lupo's declaration is denied.

Tank alleges that T-Mobile violated the IWPCA by not paying him an earned bonus or unused Paid Time Off ("PTO"). T-Mobile contends that Tank's claim as to unused PTO fails because it paid him for 97.54 hours of accrued PTO upon his departure. Tank does not address this aspect of his IWPCA claim in his response brief, thus the Court deems it waived. *De v. City of Chi.*, --- F. Supp. 2d ----, 2012 WL 6605009, at *22 (N.D. Ill. Dec. 14, 2012) ("Failure to set forth any evidence or to develop any arguments in opposition to the moving party's summary judgment motion results in waiver of the nonmoving party's arguments and an abandonment of his claims.")

As to the bonus, Tank was terminated in August 2010, and he contends he is entitled to a bonus based on the time he worked from January 1 to June 30, 2010. "The Illinois Wage Payment and Collection Act requires employers to pay employees bonuses that it unequivocally promised to pay." *O'Leary v. Accretive Health, Inc.*, No. 09 C 1428, 2010 WL 234869, at *6 (N.D. Ill. Jan. 19, 2010) (citing 820 Ill. Comp. Stat. 115/2). On January 1, 2010, T-Mobile implemented a Semi-Annual Bonus Plan. (Def.'s Ex. K, Lupo Decl., ¶ 10.) The Plan provides that bonuses are based on both T-Mobile's and the individual's performance, are "determined at [T-Mobile's] sole discretion," are not "earned or due until paid," and "there shall be no expectation of earning or payment of any bonus for any particular Performance Period." (2010 Semi-Annual Bonus Plan, Def.'s Ex. K-4, at 1, 4.) Discretionary bonuses do not entitle an employee to a bonus under the IWPCA. *O'Leary*, 2010 WL 234869, at *6 (denying IWPCA claim where bonus was discretionary and not guaranteed). Therefore, the Court grants judgment to T-Mobile on this part of Tank's IWPCA claim.

**Conclusion**

For the reasons stated above, the Court grants T-Mobile's motion for summary judgment [88-1] in its entirety. Tank's motion to strike [111-1] is denied as stated in this order. Because the docket does not reflect that service was ever effectuated on defendants Deutsche Telekom, AG and T-Mobile International AG, they are dismissed from the case pursuant to Federal Rule of Civil Procedure 4(m). Civil case terminated.

**Date**: April 19, 2013

_____
**United States District Judge
Ronald A. Guzman**